UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
FILOMENA RUSSO,                                                  Case No. 2:21-cv-03090 (GRB)

                              Plaintiff,

    -against-

WYANDANCH UNION FREE SCHOOL DISTRICT
and PAUL SIBBLIES, in his individual capacity,

                              Defendants.
----------------------------------------------------------------X


**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**


                                             **MIRANDA SLONE SKLARIN VERVENIOTIS, LLP**
                                             Attorneys for Defendants
                                             The Esposito Building
                                             240 Mineola Boulevard
                                             Mineola, New York 11501
                                             (516) 741-7676

Of Counsel
Michael A. Miranda

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT .........................................................................................1

POINT I
    IT IS UNDISPUTED THAT THE FARAGHER DEFENSE APPLIES AS PLAINTIFF
    NEVER COMPLAINED OF ANY HARASSMENT ...........................................................1

POINT II
    PLAINTIFF HAS NOT DEMONSTRATED AN ADVERSE EMPLOYMENT IMPACT ...3

POINT III
    PLAINTIFF CANNOT ESTABLISH AN ADVERSE ACTION OR ANY CAUSAL
    CONNECTION BETWEEN A PROTECTED ACTIVITY AND AN ADVERSE
    RETALIATORY ACTION ..................................................................................................7

POINT IV
    THERE CAN BE NO MONELL LIABILITY AT BAR ......................................................5

CONCLUSION ....................................................................................................................9

# TABLE OF AUTHORITIES

**Cases**

AB ex rel. EF v. Rhinebeck Central School District, 361 F.Supp.2d 312 (S.D.N.Y. 2005)...........6

Agosto v. City of NY, 982 F.3d 86 (2d Cir. 2021)..................................................................2, 8

Danzer v. Norden Systems, Inc., 151 F.3d 50 (2d Cir. 1998).......................................................5

Gorzynski v. JetBlue Airways Corp., 596 F.3d 93 (2d Cir. 2010) ...............................................2

Joseph E. Leavitt, 465 F.3d 87 (2d Cir. 2006) ............................................................................3

Smith v. Am. Express Co., 853 F.2d 151 (2d Cir. 1988) .............................................................5

**Statutes**

§1983.............................................................................................................................................9

## PRELIMINARY STATEMENT

This reply brief is submitted on behalf of the Wyandanch defendants in further support of their motion to dismiss/motion for summary judgment. This is not a typical sexual harassment case as plaintiff was a willing participant in the back and forth banter she now complains of. See e.g., 56.1, ¶32-39. Nor is this case about power as plaintiff became a tenured teacher at the District after her transfer to the Middle School - a transfer she admittedly blamed on Principal Sibblies at the time, and concededly pleaded with him to return her to his supervision at the High School. See e.g., 56.1 ¶ 64-69.

Nor does plaintiff's opposition contest the District's <u>Faragher</u> defense in that plaintiff does not dispute that she never reported the subject conduct until six (6) months after she last worked for Principal Sibblies -- despite being aware of the District's sexual harassment reporting policies. As such, the sexual harassment claims should be dismissed in their entirety.

Nor does plaintiff mount significant opposition to the adverse impact argument, as explained below. Plaintiff remains a fully tenured teacher who faces no current investigations or loss of income. In fact, it is conceded she has received a raise since the inception of this litigation. 56.1 ¶ 12.

Lastly, plaintiff raises defamation, although the Court already dismissed this claim. ECF No. 20. In view of the foregoing, the instant action should be dismissed in its entirety.

## POINT I

### IT IS UNDISPUTED THAT THE FARAGHER DEFENSE APPLIES AS PLAINTIFF NEVER COMPLAINED OF ANY HARASSMENT

Plaintiff's 56.1 and Brief do not dispute that plaintiff knew the District reporting policies, yet did nothing to report any harassment -- until six (6) months after she last worked at the high

1

school, and *after* she had pleaded with Principal Sibblies to transfer her back to the high school. 56.1 ¶ 19-26. Putting aside that he did not have this power, these admitted facts make clear that plaintiff's complaint with Sibblies had nothing to do with sexual harassment, but everything to do with her being transferred from the high school -- away from him.

So too, it is undisputed that in her last conversation with Sibblies, she told him to "buckle up mother fucker", as her attorneys were coming after him. This is hardly the expression of a person frightened to complain. See Ex. C at p. 95.

Beyond these undisputed facts, plaintiff does not dispute the Faragher/Ellerth case law. Instead, they suggest that the alleged hostile environment/harassment claim can be imputed to the District because the Principal was in a supervisory position over plaintiff. They surprisingly cite to the Circuit's decision in Gorzynski v. JetBlue Airways Corp., which we also cited. 596 F.3d 93 (2010). However, immediately after the Gorzynski panel discussed the basis for vicariously implicating the employer, it explained that even if the conduct could be vicarious, the employer was still permitted to raise the Faragher/Ellerth defense to liability. Gorzynski at 103. That case thus does not assist plaintiff at bar.

Nor does plaintiff even address our caselaw explaining the "credible fear" test. See Moving Brief, p. 12. In any event, plaintiff makes no showing of what the District, her employer, might do if she complained about Sibblies -- as opposed to her claimed fear of what the Principal would do.[1] No case has held that a principal is a "proxy" for a school district. As explained below, the Second Circuit has rejected any imputing of a principal's behavior to the District for purposes of decision-making. See Agosto, infra. This is a textbook case where Faragher should apply, and

---

[1] Plaintiff's allusion to others being transferred is misplaced as she doesn't even suggest they were transferred after complaining of harassment or discrimination -- but rather because the Principal did not "like" them. See plaintiff's Affidavit, Ex. 3.

there is no conceivable jury question.  Accordingly, the hostile work environment claim, including the sexual harassment and gender discrimination[2] claims, must be dismissed.

## POINT II

## PLAINTIFF HAS NOT DEMONSTRATED AN ADVERSE EMPLOYMENT IMPACT

Plaintiff cites the standards for the requisite adverse impact, with which we agree. However, plaintiff does not dispute the caselaw that neither her transfer to the middle school or her temporary reassignment to home office in late June of 2021 was an adverse action.  As to the 2019 transfer, plaintiff does not dispute that she never objected to it, other than her pleading with the Principal to transfer her back to the High School.

So too, it is undisputed that Dr. White recommended her for tenure while she was at the Middle School, in part based on evaluations done by Principal Sibblies. See also White Affidavit. As such, she advanced due to the transfer. As to the temporary 2021 reassignment, the plaintiff does not even attempt to distinguish the seminal Joseph case of the Second Circuit, which holds that paid administrative leave both during and following the investigation does not qualify as an adverse action.  Joseph E. Leavitt, 465 F.3d 87 (2d Cir. 2006).

In this regard, plaintiff also admits in her 56.1 that the two (2) students that came forward to the District in mid-June of 2021 initially corroborated the allegations against her of underage drinking and improper relations with students in June of 2021.  See 56.1 Response, ¶ 135.  Given this admission, plaintiff agreed in her testimony that the District was duty bound to at least investigate these serious allegations involving students.  Ex. C at pp. 478-479; see also Hodge Aff. at ¶3.

---

[2] It is undisputed that plaintiff received a promotion to a tenured position after she initially complained to the EEOC, and there is no claim that any males were ever treated better than she by the District in terms of adverse impacts. As such, there is also no substance to any gender claim.

3

Nor did plaintiff lose any time or pay due to the investigation which cleared her before the school year began in September of 2021. Ex. C at pp. 330, 355-56.

We do note that plaintiff's brief does make certain misstatements of fact. For example, there is no proof that Principal Sibblies ever stated that plaintiff had inappropriate sexual conduct with two former students. See p. 10 of Brief. Moreover, there is no proof that the Principal ever was involved with then-Athletic Director Singleton's <u>alleged</u> "coercion" of the two students who came forward to District HR. While plaintiff admits that the students initially corroborated the alleged misfeasance by plaintiff on the Puerto Rico trip, plaintiff suggests that Sibblies was somehow involved with it.

In this regard, plaintiff relies on unsupported hearsay statements that union representatives told her this, or that the mothers of the children told her this. However, a review of the one (1) union affidavit submitted, the Popko Affidavit, reflects that it does not mention Principal Sibblies. So too, the mothers' affidavits do not say anything negative about the Principal.

For example, plaintiff proffers an affidavit from Ms. Sexton, the mother of Alonte Shipp,[3] one of the 21 year olds who corroborated the alleged misfeasance of Ms. Russo. She swears in her Affidavit that it was Athletic Director Singleton who not only made nasty remarks about Ms. Russo openly at a District party, but also that Singleton paid her son $100 to go to District HR. See Ex. 15. Nowhere in the mother's affidavit does it mention Principal Sibblies.

Similarly, the mother of the other former student Dionte Jordan[4], Ms. Legette, states in an affidavit "Defendant Sibblies was a mentor to my son. I never had any issues with defendant Sibblies." See plaintiff's Exhibit 14.

---

[3] Mr. Shipp was unfortunately killed in August of 2021 before the investigator could speak to him. See Newsday August 24, 2021. www.newsday.com/long-island/suffolk/alonte-shipp-wyandanch-high-school-fatally-shot-n06575.
[4] We note that Ms. Legette's Affidavit does not actually mention the name of her son, although it is undisputed by plaintiff that her son is Dionte Jordan. See Ex. C at 328; see also Hodge Affidavit.

The foregoing Legette Affidavit dated June 28, 2021 was produced during discovery, and plaintiff was questioned about it. She admitted that her counsel had prepared it, and met with Ms. Legette. See Ex. C at pp. 520-521. In opposition to the current motion, Ms. Legette submitted an additional affidavit, this one dated April 7, 2022. See Plt. Ex. 16. This was not produced in discovery. This new affidavit again reiterates that Sibblies was a mentor to her son, and she never had any issues with the principal during her son's time with the principal.

However, this new affidavit contains a new final paragraph which states that Mr. Singleton called her at some unidentified time, and told her that he and Principal Sibblies "needed" her son because Mr. Sibblies "needed" help. If this were true, it is unknown why she did not say it the year earlier. It is also unknown why she would say she never had an issue with Mr. Sibblies in the same affidavit. Clearly, the Court cannot countenance such gamesmanship, and we ask the Court to disregard any illusion that Sibblies was involved -- particularly because it is hearsay. Plaintiff has not submitted an Affidavit from the aforementioned Singleton or from Legette's son. Nor has Ms. Legette explained when or how she suddenly recalled on the eve of plaintiff's opposition being due, that Singleton called her and said that Sibblies "needed" her son.

Of course, this hearsay statement of "needing" her son, is far different than saying "coercing" her son or "paying" her son -- neither of which she declares. The Court certainly has the authority to disregard the creation of a new affidavit that contradicts a prior sworn statement.

Testimony that is directly contradicted by documentary evidence cannot defeat summary judgment. See Danzer v. Norden Systems, Inc., 151 F.3d 50, 57 & n. 5 (2d Cir. 1998); see also Smith v. Am. Express Co., 853 F.2d 151, 155 (2d Cir. 1988). Just as the Court should not accept an affidavit that contradicts deposition testimony, it should also not allow inconsistent allegations

5

to defeat summary judgment. <u>AB ex rel. EF v. Rhinebeck Central School District</u>, 361 F.Supp.2d 312, 316 (S.D.N.Y. 2005).

As such, the Court should utilize its discretion and disregard giving any weight to this new final paragraph in the Legette affidavit.

Other than that illusion, plaintiff actually admits in her affidavit that she made a complaint against Singleton on June 14th, the day before Singleton accused her of misfeasance. <u>See</u> Russo Affidavit, Ex. 3, ¶ 67. <u>See</u> also Hodge Affidavit. As such, the Hodge timeline that Singleton only came forward <u>after</u> plaintiff had accused him of improper behavior is confirmed by plaintiff's Affidavit.

In this regard, plaintiff's admissions also render their conspiracy timeline even more implausible. Plaintiff claims that the defendants were served with this Federal Complaint at 3:19 p.m.[5] on June 14th, and then concocted a plan to have two former students corroborate allegations of improprieties against plaintiff within the next 48 hours.

In short, plaintiff would have this Court believe that although plaintiff had already accused Singleton of improprieties on June 14th, causing Singleton to defend himself by pointing to plaintiff's own improprieties, that it was the service of the Federal Complaint on the afternoon of the 14th, which caused Singleton to do this. Quite frankly, it doesn't matter what caused Singleton to do this. He is not a party or connected to the allegations at bar, and there is no plausible evidentiary proof that Sibblies was involved in the supposed plot.

As such, there is no basis to find that plaintiff has been harmed in any way, let alone that there have been any causation by the District's actions. Plaintiff admitted the District was duty

---

[5] A review of plaintiff's Affidavit of Service on "Sibblies" reflects that the principal was not personally served on June 14th. Rather, the process server left it with an unidentified person at District Administration. <u>See</u> Ex. 11. As such, the Principal was not served on June 14th, rendering plaintiff's conspiracy theory with yet another question mark.

6

bound to investigate serious investigations involving students, as set forth above. The District investigated swiftly, and then cleared plaintiff expeditiously. All the while, plaintiff was paid in full, and did not lose any benefits. So too, she was not in school for the summer, and thus did not even lose any contact with students. As such, this bizarre sideshow involving Singleton is immaterial to the legal analysis of whether the 2021 investigation claim should be dismissed.

It is also worthy of note with respect to the plaintiff's claims that the Principal had others transferred, (putting aside this relevance of these claims), that it is within a principal's discretion to transfer teachers. The commonality of plaintiff's affidavit is that the principal did not "like" these teachers -- not that there was any claims of sexual harassment involved with any of them. See Ex. 3. Accordingly, there is no merit to the plaintiff's theory that there were other women transferred. So too, plaintiff testified that men were transferred to the Middle School at the same time she was, and so not "only" women were transferred in the District. See Ex. 2, p. 532.

## POINT III

### PLAINTIFF CANNOT ESTABLISH AN ADVERSE ACTION OR ANY CAUSAL CONNECTION BETWEEN A PROTECTED ACTIVITY AND AN ADVERSE RETALIATORY ACTION

Initially, plaintiff clearly has not met the adverse action test for retaliation. In addition to the grounds set forth above for her discrimination claims, she clearly was not dissuaded from making any complaints. As her brief points out, she filed another complaint with the EEOC on July 30th, 2021. See Plaintiff's Ex. 7. Before that, she had gone to Newsday, who published an expose of this lawsuit in early July. www.newsday.com/long-island/education/wyandanch-principal-civil-lawsuit-1.5029.

These exercises of her free speech rights occurred shortly after she was supposedly defamed due to the District's investigation of corroborated claims by the two former students

7

discussed above. The record is undisputed that neither Principal Sibblies, nor anyone else at the District took any steps to publicize the investigation, or any conduct of plaintiff, whether on the Puerto Rico trip or otherwise. Instead, it was plaintiff who was featured in the Newsday article, and it was plaintiff who then went to the EEOC in July of 2021, a month after her investigation started.

Of course, plaintiff was expeditiously cleared of the allegations and she returned to teaching by early September when school resumed for the 2021-22 school year. As such, not only was she not chilled, but she also had no adverse employment action. She admittedly explained during her deposition that she enjoys working with her colleagues at the Olive School in terms of both their social and professional interactions. See Plt. Ex. 2, pp. 148-49.

Lastly, plaintiff generally claims retaliation premised upon a comment not made to her, but allegedly to her union representative Popko shortly after this suit was filed. Plaintiff claims that the principal who recommended her for tenure, Dr. White, told a union representative that "if Ms. Russo drops the case, this will all go away." See Popko Affidavit, Plt. Ex. 4. Initially, Ms. Popko does not identify what "this will all go away" is. However, *assuming arguendo*, that she is referring to the investigation that was commenced in late June of 2021, it is impossible to connect the principal who allegedly said this to the investigation. As a matter of law, the Second Circuit has held that a principal is not a decision maker in a school district. See Agosto v. City of NY, 982 F.3d 86 (2d Cir. 2021).

Secondly, as explained in the accompanying Affidavit of Dr. White, she knew little of the complaint (it had just been served on the District in mid-June, and the Newsday article had not yet appeared); and she had nothing to do with the investigation. So too, it is quite a stretch to think that the principal who just recommended plaintiff for tenure was now threatening her. In any

8

event, this is not retaliatory, as nothing was done to plaintiff as a result of this alleged comment. At best, it is evidence of a person without authority attempting to resolve a dispute.

In view of the foregoing, there is no basis for any retaliatory claim and certainly not the "but for" causation required, as explained in our moving brief.

## POINT IV

## THERE CAN BE NO MONELL LIABILITY AT BAR

Plaintiff does not even respond to this point, and thus all §1983 claims against the District should be dismissed.

## CONCLUSION

For the reasons set forth above and our moving papers, the Amended Complaint should be dismissed.


Dated: Mineola, New York
April 25, 2022

                              MIRANDA SLONE SKLARIN
                              VERVENIOTIS LLP
                              *Attorneys for Defendants*
                              WYANDANCH UNION FREE SCHOOL
                              DISTRICT, and PAUL SIBBLIES

By:_____
    Michael A. Miranda
    The Esposito Bldg.
    240 Mineola Boulevard
    Mineola, New York 11501
    (516) 741-7676