UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

FILOMENA RUSSO,

                              Plaintiff,                    **MEMORANDUM &
                                                           ORDER**
                                                           CV 21-3090 (GRB)(SIL)

              -against-

WYANDANCH UNION FREE SCHOOL DISTRICT
and PAUL SIBBLIES, in his individual capacity,

                              Defendants.


-----------------------------------------------------------------X

**GARY R. BROWN, United States District Judge:**

Appearances:

John C. Luke, Jr.
Slater Slater Schulman LLP
*Attorneys for plaintiff*
445 Broad Hollow Road
Suite 419
Melville, NY 11747

Michael Miranda
Miranda Sloane Sklarin Verveniotis LLP
*Attorneys for defendants*
240 Mineola Boulevard
Mineola, NY 11501

  Presently before the Court is defendants' motion for summary judgment. For the reasons

set forth herein, defendants' motion is **GRANTED**.

  **BACKGROUND**

  The following facts, except where otherwise noted, are undisputed and taken from the

parties' statements of undisputed facts, as provided by Rule 56.1.

Plaintiff Filomena Russo ("plaintiff") was hired as an English Language Arts teacher at Wyandanch Memorial High School in September of 2016.  Pl. R. 56.1 Statement, DE 26-19 at ¶ 7.  Individual defendant Paul Sibblies was the principal of the school during the relevant period. *Id.* at ¶ 18.  Plaintiff contends that, beginning in September 2017, she was subjected to sexual harassment by Sibblies, which included leering at her, making comments about her appearance, and sending her sexually charged messages, photos, and videos.  *See, e.g.*, *id.* at ¶ 25.  Indisputable evidence demonstrates that these interactions were not one-sided, however, as plaintiff responded in kind with, for example, suggestive messages of her own.  *See, e.g.*, *id.* at ¶ 36 (admitting she texted Sibblies that he was "sexy as f**k"); *id.* at ¶¶ 37-38 (plaintiff responding, when offered a "full massage" from Sibblies, that she would prefer that it include a happy ending); *id.* at ¶ 124 (plaintiff sending a meme related to oral sex in response to an explicit video of a penis from Sibblies).

Plaintiff and Sibblies attended multiple baseball games together throughout 2018 on their personal time and not by virtue of any school-related obligation.  *Id.* at ¶¶ 87, 89, 92.  Plaintiff paid for the tickets and admits that she never brought other District personnel to a sporting event as her guest.  *Id.* at ¶¶ 32, 91.  After one of these games in late 2018 or early 2019, Sibblies kissed her on the mouth.  *Id.* at ¶¶ 81-83. Plaintiff contends that this kiss, and similar interactions in Sibblies' office over the next six months, occurred without her consent and over her verbal objections.  *Id.* at ¶¶ 81-83.

The District maintained a "Sexual Harassment of District Personnel Policy" during this period that mandated immediate reporting to the District's designated complaint officers, and plaintiff was aware of this policy.  *Id.* at ¶¶ 19-20, 23.  Nevertheless, plaintiff never reported any of these incidents to the District, claiming that she refrained from doing so due to fear of reprisal

from Sibblies.  *See, e.g.*, *id.* at ¶¶ 20-26; Russo Aff., DE 26-3 at ¶ 40 ("I was fearful that if I did not follow Defendant Sibblies' wishes, I would not be given tenure, and I would be either transferred or fired."); Russo Aff., DE 26-3 at ¶ 60 ("I was afraid of making a complaint against Defendant Sibblies for fear of being retaliated against and losing my job.").  She further testified, however, that Sibblies never threatened her.  Pl. R. 56.1 Statement, DE 26-19 at ¶ 42.

In July of 2019, Sibblies texted plaintiff to inform her that they were both being transferred from the high school to the middle school, and she received formal notice from the district shortly thereafter.  *Id.* ¶¶ 47, 52.  According to defendants, plaintiff and several other teachers were expected to be transferred to the middle school due to fiscal issues within the district.  *Id.* at ¶¶ 53-56, 62.  After learning that Sibblies was not being transferred to the middle school as initially indicated, plaintiff expressed to Sibblies that she would have been more amenable to the transfer if Sibblies was still being transferred with her.  *Id.* at ¶¶ 50-51, 61, 64.  Plaintiff also testified that at the time of her transfer, she maintained a good relationship with Sibblies.  *Id.* at ¶ 48.

Throughout the fall of 2019, plaintiff repeatedly implored Sibblies to help her get transferred back to the high school to no avail.  *Id.* at  ¶¶ 65-66.  Their relationship began to sour and, coming to a head, plaintiff approached Sibblies at a high school football game in October of 2019 and told him that she had retained a lawyer and that he should "[b]uckle up, motherfucker. I'm coming for ya" after he again stated his inability to help.  *Id.* at ¶¶ 67-68.  On January 24, 2020, plaintiff filed a complaint with EEOC.  *Id.* at ¶ 44.  Following the 2019 transfer, plaintiff retained the same salary and benefits, and, in fact, plaintiff ultimately received a raise.  *Id.* at ¶¶ 10-13.  Additionally, in March of 2021, after the filing of the EEOC charge, plaintiff was granted tenure by the district—effectively constituting a promotion.  *Id.* at ¶¶ 14, 72.

The District and Sibblies[1] were served with notice of this suit around 3 o'clock P.M. on June 14, 2021, the same day plaintiff made a complaint about then-football coach and athletic director Dwight Singleton, to Kester Hodge, the Assistant Superintendent for Human Resources Director for the District.   *See* Def. Reply R. 56.1 Statement, DE 27-3 at ¶ 159; Russo Aff., DE 26-3 at ¶¶ 67-68; Affidavit of Service, DE 26-11.  Plaintiff's complaint against Singleton alleged that he had looked at her in a "creepy" fashion and saved a voicemail message from her on his phone where she had declined an opportunity to coach the softball team and informed her that he listens to it over and over again.  Pl. R. 56.1 Statement, DE 26-19 at ¶ 131.

As part of his investigation into Singleton's conduct, Hodge interviewed Singleton the next day, June 15, 2021.  Hodge Aff., DE 25-2 at ¶ 3.  It was during this interview that Singleton first brought to Hodge's attention that two former students alleged that plaintiff had provided them with alcohol and had engaged in sexual conduct with at least one student on a senior class trip to Puerto Rico in 2019.  *Id.*  Though skeptical of the timing at which these counter-allegations had arisen, Hodge asserts that he was duty-bound to inform the Superintendent given the seriousness of those allegations.  *Id.*  The following day, June 16, 2021, Hodge interviewed the two students who corroborated the allegations at that time.  *Id.* at ¶ 4.  Hodge avers that he did not get the sense that the students had been coerced to come forward by Singleton.  *Id.*

According to Hodge, at the time of the interviews with both Singleton and the two students, he was unaware that plaintiff had recently raised allegations against the District and Sibblies.  *Id.* at ¶ 5.  Further, Hodge asserts that the information leading to the investigation of plaintiff was given to him solely by Singleton, and not Sibblies.  *Id.*  On June 17, 2021, Hodge reported these

---

[1] Sibblies was not personally served, and it is unclear whether he became aware of the suit on the 14th or at a later date.  *See* Affidavit of Service, DE 11.  Service on Sibblies was effected by leaving a copy of the summons with the same employee who accepted service on behalf of the District.  *See* Affidavit of Service, DE 10.

allegations to the Superintendent and plaintiff was reassigned to home office on June 18th while the matter was independently investigated. *Id.* at ¶ 6. Plaintiff was made aware by her union representative that rumors about her alleged misconduct were spreading throughout the school district. *See* Pl. R. 56.1 Statement, DE 26-19 at ¶ 126. The administrative reassignment ultimately lasted only five days, with plaintiff calling in sick on two of the days, and plaintiff received her full pay and benefits while reassigned. *Id.* at ¶¶ 141-43. Following an independent investigation, the allegations remained unsubstantiated as the students declined to participate, and plaintiff returned to her teaching position at the start of the 2021-2022 school year. *Id.* at ¶ 146.

The parties' factual narratives diverge as to the true genesis of the investigation into plaintiff's conduct on the senior class trip. According to plaintiff, Sibblies and Singleton conspired to concoct this story about the senior class trip between receipt of the complaint on the afternoon of June 14th and Hodge's interview with Singleton on the 15th. *See generally*, Pl. R. 56.1 Statement, DE 26-19. Plaintiff concedes, however, that Hodge received this information directly from Singleton and she testified that she had no proof of Sibblies' purported involvement in the filing of the complaint against her beyond "all of the alleged talk and, you know, going around." Russo Dep. Tr., DE 26-2 at 336:22-337:5; 592:15-21.

No affidavits from either student who purportedly made accusations against plaintiff appear in the record.[2] Plaintiff's opposition papers include affidavits from Renee Legette, and Lakiecha Sexton, the students' mothers. However, as these affidavits – in all relevant respects – constitute inadmissible hearsay, the Court will not consider them. *See* Fed. R. Evid. 801; Fed. R. Evid. 802; *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 131 n.122 (2d Cir. 2004) ("Some

---

[2] One of the students, Alonte Shipp, unfortunately passed away during the subsequent investigation and his testimony is therefore unavailable. Russo Dep. Tr., DE 26-2 at 260:1-6.

of the affidavits contain hearsay statements and speculation, however, and as these elements of the affidavits would be inadmissible at trial, the district court was free to disregard them.").

Plaintiff's Union Representative, Kathlyn Popko ("Popko"), avers that she had a meeting in "June of 2021" with the principal of the middle school, Darlene White ("White"), who allegedly told Popko that "[i]f Ms. Russo drops the case this will all go away."  Popko Aff., DE 26-4 at ¶ 8. White had recently recommended plaintiff for tenure, was not on the School Board, was not a member of the executive administration, was not privy to the investigation, and did not have the authority to negotiate or enter into settlements on behalf of the District.  *See* White Aff., DE 27-1 at ¶¶ 7-8.  Further, contrary to Popko's assertion, White avers that she does not recall this conversation taking place.  *Id.* at ¶ 7.  Though the investigation ultimately found the allegations to be unsubstantiated as the students did not participate, plaintiff maintains that her reputation in both the District and the community has been damaged.  Pl. R. 56.1 Statement, DE 26-19 at ¶¶ 160, 162.

Plaintiff now asserts causes of action for gender and sexual discrimination under Title VII and 42 U.S.C. § 1983, a hostile work environment under Title VII and 42 U.S.C. § 1983, and retaliation under Title VII and the New York State Human Rights Law.[3]

**DISCUSSION**

***Summary Judgment Standard***

This motion for summary judgment is decided under the oft-repeated and well understood standard for review of such matters, as discussed in *Bartels v. Inc. Vill. of Lloyd Harbor*, 97 F.

---

[3] Plaintiff's papers include argument as to a claim for defamation per se under state law, but this claim was dismissed without prejudice at the January 3, 2022 pre-motion conference and has never been properly replead.  *See* 1/3/22 Tr., DE 21 at 4:12-17.  As such, this claim is not addressed herein.

Supp. 3d 198, 211 (E.D.N.Y. 2015), *aff'd sub nom. Bartels v. Schwarz*, 643 Fed. App'x. 54 (2d Cir. 2016), which discussion is incorporated by reference herein.

### Title VII Gender Discrimination[4]

Among other things, Title VII bars discrimination on the basis of gender, which encompasses sexual harassment. 42 U.S.C. § 2000e-2(a)(1). Discrimination primarily exists in two forms: *quid pro quo* discrimination and hostile work environment discrimination. *See Mormol v. Costco Wholesale Corp.*, 364 F.3d 54, 57 (2d Cir. 2004) ("The distinction between the two forms of sexual harassment serves to instruct that Title VII is violated by either explicit or constructive alterations in the terms or conditions of employment and to explain [that] the latter must be severe or pervasive.") (citation omitted).

To establish a *prima facie* case of discrimination under Title VII, plaintiff must show that she: (1) is a member of a protected class; (2) is qualified for her position; (3) suffered an adverse employment action; and that (4) the circumstances surrounding that action give rise to an inference of sex discrimination. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). If a plaintiff successfully presents a *prima facie* case, "the employer may rebut it by articulating legitimate and non-discriminatory reasons for the adverse employment action…A defendant meets his burden if he presents reasons that, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the adverse action." *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 468–69 (2d Cir. 2001) (cleaned up). The burden then shifts back to plaintiff to demonstrate

---

[4] Though defendants contend, in a footnote, that any acts prior to March 30, 2019, should be dismissed as time-barred since the EEOC complaint was filed on January 24, 2020, this Court finds that the continuing violations doctrine applies and will consider all relevant acts. "Under Title VII's continuing violation doctrine, 'if a plaintiff has experienced a continuous practice and policy of discrimination, ... the commencement of the statute of limitations period may be delayed until the last discriminatory act in furtherance of it.'" *Washington v. Cnty. of Rockland*, 373 F.3d 310, 317 (2d Cir. 2004) (quoting *Fitzgerald v. Henderson*, 251 F.3d 345, 359 (2d Cir. 2001)); *see Bermudez v. City of New York*, 783 F. Supp. 2d 560, 582 (S.D.N.Y. 2011) (applying continuing violations doctrine because "at least one act of sexual harassment that occurred within the limitations period.").

that the proffered reason is pretextual. *See Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000) ("For the case to continue, the plaintiff must then come forward with evidence that the defendant's proffered, non-discriminatory reason is a mere pretext for actual discrimination.").

It is undisputed that plaintiff is a member of a protected class and was qualified for her position.  Thus, only the third and fourth elements are at issue here.  As to third element, to be actionable, the adverse employment change must be material.  *Bowen-Hooks v. City of New York*, 13 F. Supp. 3d 179, 211 (E.D.N.Y. 2014) ("Such action must be more disruptive than a mere inconvenience or an alteration of job responsibilities.") (citation omitted).  Examples of materially adverse employment actions include termination, demotion, loss of benefits, or significantly diminished material responsibilities.  *Id.*

The proffered "adverse employment action" is limited to the five-day administrative reassignment pending the outcome of the investigation.  Courts have repeatedly found that merely being subjected to normal investigatory procedures does not, without more, rise to the level of a materially adverse employment action.  *See, e.g.*, *Joseph v. Leavitt*, 465 F.3d 87, 91 (2d Cir. 2006) ("[A]n employee does not suffer a materially adverse change in the terms and conditions of employment where the employer merely enforces its preexisting disciplinary policies in a reasonable manner."); *Brayboy v. O'Dwyer*, 633 F. App'x 557, 558 (2d Cir. 2016) ("'[A]dministrative leave with pay during the pendency of an investigation does not, without more, constitute an adverse employment action.'") (quoting *Leavitt*, 465 F.3d at 91).

The record indicates that the District's investigation was expeditiously conducted and promptly terminated upon a finding that the claims could not be substantiated.  Though the allegations were later found to be unsubstantiated, there is nothing in the record to indicate that the investigation or short reassignment were unreasonable under the circumstances.  *Roff v. Low*

*Surgical & Med. Supply, Inc.*, No. CV-03-3655 (SJF)(JMA), 2004 WL 5544995, at \*7 (E.D.N.Y. May 11, 2004) ("[P]laintiff's allegation that she was falsely accused of [wrongdoing], absent any indication that the accusation resulted in a material loss of benefits, a demotion, significantly diminished responsibilities, or other materially adverse employment consequence, does not constitute an adverse employment action.").   Additionally, during the investigation and short reassignment plaintiff maintained the same salary and benefits.  Pltf. R. 56.1 Statement, DE 26-19 at ¶ 143.  *See Spaulding v. New York City Dep't of Educ.*, No. 12-CV-3041(KAM)(VMS), 2015 WL 12645530, at \*38 (E.D.N.Y. Feb. 19, 2015), *adopted by*, No. 12-CV-3041(KAM)(VMS), 2015 WL 5560286 (E.D.N.Y. Sept. 21, 2015) ("A false accusation, absent a change in the terms and conditions of employment, is not sufficient to state an adverse employment action.") (citations omitted).

To establish there was "more" here, plaintiff relies on the temporal proximity between the service of her federal complaint on the defendants and the initiation of the investigation into the allegations against her.  Singleton is not named as a defendant; as such, the question becomes the District's motivation in carrying out the investigation.  *See McPherson v. New York City Dep't of Educ.*, 457 F.3d 211, 216 (2d Cir. 2006) ("In a discrimination case, however, we are decidedly not interested in the truth of the allegations against plaintiff. We are interested in what motivated the employer, [and] the factual validity of the underlying imputation against the employee is not at issue.") (cleaned up).   There is nothing in the record to establish any gender-based animus attributable to the District.  *See Spaulding*, 2015 WL 12645530, at \*39 n.70 ("Even had Plaintiff demonstrated an adverse action, she did not produce any evidence that the OSI investigation [of sexual conduct with a student] was motivated by an unlawful purpose, such as that nondisabled employees accused of similar conduct were not investigated.").

Hodge did not become aware that plaintiff had filed suit against the District and Sibblies until after he interviewed the two students who, at that time, corroborated the allegations. Hodge Aff., DE 25-2 at ¶¶ 4-5. He further avers that he did not speak to Sibblies regarding the allegations and that he did not get the sense that the former students were being coerced by Singleton into making the complaint. *Id.* Simply put, there is no evidence to demonstrate that Hodge was aware of plaintiff's accusations against Sibblies when he escalated Singleton's complaint to the Superintendent. Thus, nothing here indicates any discriminatory motive on the part of the District in instituting the investigation and administratively reassigning plaintiff during its pendency. *See Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 101 (2d Cir. 2010) ("Even in the discrimination context, however, a plaintiff must provide more than conclusory allegations to resist a motion for summary judgment.") (citation omitted).

As such, defendants' motion for summary judgment as to this claim is GRANTED and the claim is dismissed.[5]

### *Title VII Hostile Work Environment*

> In order to prevail on a claim that sexual harassment caused a hostile work environment in violation of Title VII, a plaintiff must establish two elements. First, the plaintiff must show that the workplace is permeated with discriminatory intimidation, ridicule, and insult ... that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment. Second, the plaintiff must show that a specific basis exists for imputing the conduct that created the hostile work environment to the employer.

*Small v. Garland*, No. 18-CV-5659 (BCM), 2021 WL 1226979, at *14 (S.D.N.Y. Mar. 31, 2021) (cleaned up). Further, "[a] plaintiff must also demonstrate that she was subjected to the hostility

---

[5] Even assuming, *arguendo*, that plaintiff had alleged a *prima facie* case of discrimination, she would still need to adduce evidence showing that the District's purported basis for her reassignment was pretextual. Given Hodge's averments as to his lack of knowledge of the suit against the District at the time of Singleton's complaint and plaintiff's failure to adduce any evidence beyond mere supposition of improper motive on the part of the District, plaintiff would be unable to meet this burden. *See Ferraro v. Kellwood Co.*, 440 F.3d 96, 100 (2d Cir. 2006) (granting summary judgment where plaintiff failed to "offer some evidence, such as the falsity of [defendant]'s stated legitimate reason, from which one may infer the ultimate fact of discrimination.").

because of her membership in a protected class." *Tillery v. New York State Off. of Alcoholism & Substance Abuse Servs.*, 739 F. App'x 23, 27 (2d Cir. 2018) (citing *Brennan v. Metro. Opera Ass'n, Inc.*, 192 F.3d 310, 318 (2d Cir. 1999)).

*Severe or Pervasive*

In order to meet the first prong, "[t]he conduct must be both one that a 'reasonable person would find hostile or abusive [objective], and one that the victim in fact did perceive to be [subjective].'"[6] *Dash v. Bd. of Educ. of City Sch. Dist. of New York*, 238 F. Supp. 3d 375, 386 (E.D.N.Y. 2017) (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998)) (alterations in original). Taking the facts in the light most favorable to plaintiff, the Court finds that the objective prong is easily met. Objectively, assuming the facts asserted by plaintiff to be true, unwanted contact and suggestive text messages from a supervisor clearly satisfy the hostile or abusive element of the test. *See, e.g.*, *Bermudez v. City of New York*, 783 F. Supp. 2d 560, 584 (S.D.N.Y. 2011) (denying summary judgment and finding that plaintiff established a hostile work environment where plaintiff testified that her direct supervisor repeatedly commented on her body, invited her to his house, and expressed romantic feelings towards her).

However, the evidentiary record adduced here belies any argument by plaintiff that she subjectively perceived her workplace to be hostile. "'When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for

---

[6] A plaintiff must also "demonstrate some specific basis to hold the employer liable for the misconduct of its employees." *Karibian v. Columbia Univ.*, 14 F.3d 773, 779 (2d Cir. 1994). As the Second Circuit has held, "[w]hen, as here, the alleged harasser is in a supervisory position over the plaintiff, the objectionable conduct is automatically imputed to the employer." *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 103 (2d Cir. 2010) (citing *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998); *Faragher v. City of Boca Raton,* 524 U.S. 775 (1998)); see also *Dash v. Bd. of Educ. of City Sch. Dist. of New York*, 238 F. Supp. 3d 375, 392 (E.D.N.Y. 2017) ("Plaintiff can impute the harasser's conduct to his employer, because the Principal had immediate (or successively higher) authority over plaintiff.") (citations omitted). Thus, the District would be liable for Sibblies' misconduct were plaintiff able to prove the existence of a hostile work environment.

summary judgment.'" *Bartels*, 97 F. Supp. 3d at 216 (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)).   The text messages shared between plaintiff and Sibblies show a consensual romantic/sexual relationship between two coworkers, with both sides sending their fair share of suggestive materials.  *See* Pl. R. 56.1 Statement, DE 26-19 at ¶¶ 115-124.  For example, both plaintiff and Sibblies engaged in sexually charged banter that included discussions of, *inter alia*, massages with happy endings[7], oral sex[8], and the size of plaintiffs' breasts.[9]  Plaintiff also sent Sibblies complimentary messages during the period of alleged harassment, including on Father's Day.  *Id.* at ¶ 39.

Plaintiff's explanation that she feared reprisals is entirely undermined by her undisputed conduct.  *See, e.g.*, *id.* at ¶ 124.  After her transfer to the middle school, plaintiff unequivocally expressed dissatisfaction that Sibblies had not been transferred with her and repeatedly implored Sibblies to help return her to the high school.  *See id.* at ¶¶ 50, 51, 64, 65.  Indeed, plaintiff testified that her "relationship with him as friends was good" immediately preceding her transfer to the middle school.  Russo Dep. Tr., DE 26-2 at 93:14-24.  In fact, plaintiff grew infuriated with Sibblies when it emerged that they would not be transferred together.  She testified:

> Q: Now, when you left and you found out about the transfer in July, early July you're saying, right –
> A.  Yes.
> Q: -- of 2019, you indicated that you found out because he said that he was taking you with him?
> A.  Correct.
> Q: At that time, your relationship with him as friends was good; was it not?
> A: Yes.
> Q: And you continued to communicate with him as friends for several months after that right?
> *A: No. It stopped right after he told me he wasn't moving.  I was really upset and then it started again in October with the Yankees going to the playoffs.*
> Q: So you had no communications with him?

---

[7] Pltf. R. 56.1 Statement, DE 26-19 at ¶¶ 37-38.
[8] *Id.* at ¶¶ 115-20.
[9] *Id.* at ¶¶ 121-22.

A: Very limited, very limited between July and September. I think the first time I
saw him was at the Homecoming game.
Q: And that was in October of 2019?
A: Correct.

*Id.* at 93:14-94:14 (emphasis added).   Plaintiff's claim of unwelcome harassment is blatantly

contradicted by the record.

### *The Faragher-Ellerth Defense*

Even assuming, *arguendo*, that plaintiff could meet burden, defendants would still be able

to raise the *Faragher-Ellerth* defense.  *See Gorzynski*, 596 F.3d at 103.  To establish the defense,

"defendant must show by a preponderance of the evidence (1) 'that the employer exercised

reasonable care to prevent and correct promptly any sexually harassing behavior,' and (2) 'that the

plaintiff employee unreasonably failed to take advantage of any preventive or corrective

opportunities provided by the employer or to avoid harm otherwise.'"  *Dash*, 238 F. Supp. 3d at

387 (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998); *Burlington Indus., Inc. v.

Ellerth*, 524 U.S. 742, 765 (1998)).  The operative question is whether plaintiff's failure to avail

herself of the District's reporting mechanism was unreasonable.

There is no dispute that the District had a functional reporting mechanism in place for

exactly the type of complaints plaintiff now raises.  This conclusion is further buttressed by the

speed and seriousness with which the District pursued both the allegations against plaintiff and

plaintiff's allegations against Singleton.  Though not dispositive, the existence of this policy

weighs strongly in favor of the defendants.  *See Ferraro v. Kellwood Co*, 440 F.3d 96, 102 (2d Cir.

2006) ("An employer may demonstrate the exercise of reasonable care, required by the first

element, by showing the existence of an antiharassment policy during the period of the plaintiff's

employment, although that fact alone is not always dispositive.").  Indeed, the record indicates that

the District acted promptly when presented with allegations of misconduct.  As noted above, within

a day of plaintiff's allegations against Singleton, Hodge acted expeditiously and interviewed Singleton to determine their veracity. Once confronted with Singleton's allegations against plaintiff, Hodge promptly investigated the claims and elevated the issue directly to the Superintendent of the District. Plaintiff makes no attempt to dispute this point.

As to the second element, "[t]he defendant bears the ultimate burden of persuasion on this element, but it may carry that burden by first introducing evidence that the plaintiff failed to avail herself of the defendant's complaint procedure and then relying on the absence or inadequacy of the plaintiff's justification for that failure." *Ferraro v. Kellwood Co*, 440 F.3d 96, 103 (2d Cir. 2006) (citing *Leopold v. Baccarat, Inc. ("Leopold II ")*, 239 F.3d 243, 246 (2d Cir. 2001)). This second requirement fosters an important policy goal of encouraging prompt reporting by employees. *See Fierro v. Saks Fifth Ave.*, 13 F. Supp. 2d 481, 492 (S.D.N.Y. 1998) ("Put simply, an employer cannot combat harassment of which it is unaware."); *see also Faragher*, 524 U.S. at 805-06 ("Although Title VII seeks to make persons whole for injuries suffered on account of unlawful employment discrimination, its primary objective, like that of any statute meant to influence primary conduct, is not to provide redress but to avoid harm.") (cleaned up).

Plaintiff conclusorily avers that she "was afraid of making a complaint against Defendant Sibbles for fear of being retaliated against and losing [her] job." Russo Aff., DE 26-3 at ¶ 60. She further states that she "witnessed him retaliate against other female teachers." *Id.* at ¶ 61. It appears, however, that none of the instances she identifies were in fact "retaliation" under Title VII in that none of them were preceded by a complaint filed in accordance with the District's procedures. *See Fierro*, 13 F. Supp. 2d at 492 (granting summary judgment where the plaintiff failed to "cite to other employees who were subjected to retaliation *because they availed themselves of [the defendant's] complaint procedures*.") (emphasis added); *see also Leopold*, 239

14

F.3d at 246 ("A credible fear must be based on more than the employee's subjective belief. Evidence must be produced to the effect that the employer has ignored or resisted *similar complaints* or has taken adverse actions against employees in response to such complaints.") (emphasis added). Plaintiff has made no showing that the District has ignored previous complaints or has taken adverse action against any complainant such that she reasonably believed that lodging her complaint would be ineffective or lead to a negative outcome.[10]

Further, plaintiff's generalized fear of retaliation is insufficient to overcome defendants' entitlement to the *Faragher-Ellerth* defense here. To wit:

> every employee who feels harassed by a supervisor will at some level fear the inevitable unpleasantness which will result from complaining to the employer. Confrontation is by its very nature unpleasant. However, to allow an employee to circumvent the reasonable complaint requirements of *Faragher* and *Burlington* by making conclusory allegations of feared repercussions, would effectively eviscerate an affirmative defense which the Supreme Court clearly went to great effort to craft in order to stem the tide of unwarranted lawsuits.

*Fierro*, 13 F. Supp. 2d at 492. As such, defendants' motion for summary judgment is GRANTED and this claim is dismissed.

### Retaliation Under Title VII & New York State Law[11]

"Title VII prohibits employers from retaliating 'against any ... employee[ ] ... because [that individual] has opposed any practice' made unlawful by Title VII." *Hampton v. Wilkie*, 554 F. Supp. 3d 512, 523 (E.D.N.Y. 2021) (quoting 42 U.S.C. § 2000e–3(a)). New York law provides:

> It shall be an unlawful discriminatory practice for any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he or she has opposed any practices forbidden under this article or because he or she has filed a complaint, testified or assisted in any proceeding under this article.

---

[10] That plaintiff's stated fear is only in relation to how Sibblies would respond is also problematic. The employee's fear must be based on how the employer will respond, not the harasser. *See Leopold v. Baccarat, Inc*, 239 F.3d at 246; *Finnerty v. William H. Sadlier, Inc.*, 176 F. App'x 158, 163 (2d Cir. 2006).

[11] These claims are treated together as they are analyzed under the same standard. *See Reed v. A.W. Lawrence & Co.*, 95 F.3d 1170, 1177 (2d Cir. 1996) ("We consider Reed's state law claims in tandem with her Title VII claims because New York courts rely on federal law when determining claims under the New York Human Rights Law.").

N.Y. Exec. Law § 296(7).  Under both statutes, retaliation claims are reviewed under the burden-

shifting approach promulgated by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411

U.S. 792 (1973).  *See Schaper v. Bronx Lebanon Hosp. Ctr.*, 408 F. Supp. 3d 379, 390 (S.D.N.Y.

2019).  Thus,

> To make out a *prima facie* case of retaliation, a plaintiff must show: (1) they
> engaged in a protected activity; (2) their employer was aware of this activity; (3)
> the employer took adverse employment action against them; and (4) a causal
> connection exists between the alleged adverse action and the protected activity.
> *Summa v. Hofstra Univ.*, 708 F.3d 115, 125 (2d Cir. 2013) (citing *Schiano v.
> Quality Payroll Sys., Inc.*, 445 F.3d 597, 608 (2d Cir. 2006)).  Under the *McDonnell
> Douglas* burden-shifting framework, once the plaintiff establishes a *prima facie*
> case of retaliation, the burden of production shifts to the employer to demonstrate
> a legitimate, non-discriminatory reason for its action.  *McDonnell Douglas Corp.
> v. Green*, 411 U.S. 792, 802-03, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Summa*,
> 708 F.3d at 125.  If the employer demonstrates a legitimate, non-discriminatory
> reason, the burden shifts back to the plaintiff to establish, through direct or
> circumstantial evidence, that the employer's action was, in fact, motivated by
> discriminatory retaliation.  *Id.*

*Hampton*, 554 F. Supp. 3d at 523.  Defendants do not contest that the first two requirements are

met.

As to the third requirement, the Supreme Court has held that, to qualify as an adverse

employment action for purposes of a retaliation claim, "the *employer's* actions must be harmful to

the point that they could well dissuade a reasonable worker from making or supporting a charge

of discrimination."  *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006) (emphasis

added).  The employment action in question is plaintiff's brief reassignment to the administrative

office pending outcome of the District's investigation into her alleged misconduct.[12]  While the

reassignment does not constitute an adverse employment action for purposes of a discrimination

---

[12] Though plaintiff repeatedly refers to the "defamatory comments" that began spreading about her and attributes
them to the defendants, *see, e.g.*, Pl. Aff., DE 26-3 at ¶ 86 ("Defendants retaliated against me for filing a federal
lawsuit and defamed my reputation by spreading false statements that I engaged in sexual relations with my
students"), she has adduced no proof of the source of these comments or how they were originally disseminated.
Further, plaintiff's claim for defamation was previously dismissed and never replead.

claim, *see infra*, it could constitute an adverse action under the Supreme Court's broader interpretation of what qualifies for the purposes of a claim for retaliation. *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 90 (2d Cir. 2015) ("The Supreme Court has held that in the context of a Title VII retaliation claim… This definition [of an adverse employment action] covers a broader range of conduct than does the adverse-action standard for claims of discrimination under Title VII.") (citing *Burlington*, 548 U.S. at 57). A reasonable employee could be dissuaded from filing a complaint if he or she was removed from his or her normal role and administratively reassigned shortly after filing said complaint.[13]

The fourth requirement, causation, requires that "a plaintiff making a retaliation claim under § 2000e–3(a) [] establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer." *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013). Stated another way, the plaintiff must adduce "proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Id.* at 360. Our inquiry here is thus focused on the actions and motivations of the District as her employer.

While plaintiff points to the temporal proximity between the service of her complaint and her reassignment, this myopic view of the facts omits consideration of two crucial intervening acts: (1) Hodge's interview with Singleton that same day and (2) the two students corroborating the allegations the following day. That the District acted expeditiously when faced with these allegations does not bring plaintiff over the causation threshold. *See Ya-Chen Chen v. City Univ.*

---

[13] The Court notes that there is currently a split among the District Courts of this Circuit as to whether a paid reassignment or leave pending the outcome of an investigation constitutes an adverse action for purposes of establishing a retaliation claim under Title VII. In any event, the Court need not decide the issue because, assuming *arguendo* that the transfer pending the investigation was an adverse action, plaintiff has failed to establish but-for causation and failed to rebut the defendants' proffered non-discriminatory justifications.

*of New York*, 805 F.3d 59, 69 (2d Cir. 2015) (affirming grant of summary judgment because "the mere temporal proximity of [plaintiff's] complaint to the employment decisions was not sufficient to raise a genuine dispute of material fact about [defendant]'s alleged retaliatory motive.").  Indeed, there is no showing that Singleton would not have levied the same allegations absent her complaint against Sibblies.  Singleton was already being interviewed by Hodge in relation to plaintiff's complaint against him and there has been no showing that Singleton knew of the complaint against Sibblies when he met with Hodge.  At a minimum, it is undisputed that Hodge was not aware of the complaint against Sibblies at the time of the interviews with Singleton and the two students.  Further, plaintiff has not adduced competent proof that Singleton was acting in concert with Sibblies and, even if he was, proof that the District was aware of this collusion at the time it made the decision to administratively reassign her.  As such, plaintiff has not come forward with sufficient proof beyond mere speculation to demonstrate that her complaint against Sibblies was a but-for cause of her reassignment by the District.

Assuming plaintiff carried her burden of establishing a *prima facie* case, she must still rebut the defendants' proffered legitimate, non-discriminatory reason for its action and "prove 'that the desire to retaliate was the but-for cause of the challenged employment action.'"  *See Ya-Chen Chen*, 805 F.3d at 70 (quoting *Nassar*, 570 U.S. 338 at 339).  Plaintiff has not done so.  *See El Sayed v. Hilton Hotels Corp.*, 627 F.3d 931, 933 (2d Cir. 2010) ("The temporal proximity of events may give rise to an inference of retaliation for the purposes of establishing a *prima facie* case of retaliation under Title VII, but without more, such temporal proximity is insufficient to satisfy appellant's burden to bring forward some evidence of pretext.").  As stated above, Hodge was not aware of plaintiff's suit or any allegations against Sibblies at the time he reported Singleton's allegations against her to the District.  That the two students immediately came forward and

corroborated the complaint casts further doubt on plaintiff's claims of pretext. Further, defendants' stated reason for its conduct is bolstered by the seriousness of the allegations levied against plaintiff. Even if plaintiff is correct that Singleton and Sibblies colluded in drumming up these allegations against her, this says nothing of the District's response when confronted with those allegations absent knowledge of any collusion.

Thus, defendants' motion for summary judgment on these claims is GRANTED and the claims are dismissed.

### Hostile Work Environment and Sex Discrimination Under 42 U.S.C. § 1983[14]

Plaintiff alleges a claim for municipal liability against the District based on its failure to properly train Sibblies and the deliberate indifference that this failure would lead to the constitutional wrong that impacted plaintiff. *See* Pl. Opp. Br., DE 26-18 at 17. To hold the District liable for Sibblies' alleged misconduct, plaintiff must demonstrate a basis for finding that the District individually violated her rights. *Naumovski v. Norris*, 934 F.3d 200, 212 (2d Cir. 2019) ("§ 1983 does not permit such vicarious liability. If [an individual] defendant has not *personally* violated a plaintiff's constitutional rights, the plaintiff cannot succeed on a § 1983 action against the defendant.") (alterations in original). As the Supreme Court has explained,

> the language of § 1983, read against the background of the same legislative history, compels the conclusion that Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort. In particular, we conclude that a municipality cannot be held

---

[14] Plaintiff's fourth cause of action is labeled "Hostile Work Environment, and Gender and Sexual Discrimination under 42 U.S.C. § 1983," yet plaintiff has a section of her opposition brief addressing liability for retaliation under § 1983, a claim that requires a separate analysis under a different causation standard. Elsewhere, plaintiff asserts both discrimination and retaliation under Title VII, but as distinct causes of action. In any event, the claim for retaliation under § 1983, to the extent one exists, is dismissed for the same reasons as the claim for retaliation under Title VII. *See Giscombe v. New York City Dep't of Educ.*, 39 F. Supp. 3d 396, 406 (S.D.N.Y. 2014) ("[T]he standards for evaluating Title VII and § 1983 retaliation claims are identical"); *see also Keles v. Davalos*, No. 19-CV-3325(DG)(TAM), 2022 WL 17495048, at *19 (E.D.N.Y. Nov. 23, 2022) ("[F]or an adverse retaliatory action to be because a plaintiff made a charge, the plaintiff must plausibly allege that the retaliation was a but-for cause of the employer's adverse action. It is not enough that retaliation was a 'substantial' or 'motivating' factor in the employer's decision.") (cleaned up).

liable solely because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory.

*Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978).

Plaintiff has not established the existence of a municipal policy or custom through which she can hold the District liable for Sibblies' conduct.  Plaintiff concedes that the District requires all employees to complete sexual harassment training.  Plaintiff neither identifies a specific deficiency in the District's training program nor explains how that deficiency contributed to her injury, stating only that "if the District properly trained Defendant Sibblies he would know better than to" engage in the alleged conduct. Pl. Opp. Br., DE 26-18 at 18.  Merely alleging that a municipal employee was trained and committed a constitutional tort cannot subject the municipality to liability.  *Amnesty Am.*, 361 F.3d at 129 (granting summary judgment where plaintiffs "neglected to offer any evidence, however, as to the purported inadequacies in the Town's training program and the causal relationship between those inadequacies and the alleged constitutional violations."); *City of Canton, Ohio v. Harris*, 489 U.S. 378, 391 (1989) ("[F]or liability to attach in this circumstance the identified deficiency in a city's training program must be closely related to the ultimate injury.").  The Supreme Court has held:

> In virtually every instance where a person has had his or her constitutional rights violated by a city employee, a § 1983 plaintiff will be able to point to something the city "could have done" to prevent the unfortunate incident. *See Oklahoma City v. Tuttle*, 471 U.S., at 823, 105 S.Ct. at 2436 (opinion of REHNQUIST, J.). Thus, permitting cases against cities for their "failure to train" employees to go forward under § 1983 on a lesser standard of fault would result in *de facto respondeat superior* liability on municipalities—a result we rejected in *Monell*, 436 U.S., at 693–694, 98 S.Ct., at 2037. It would also engage the federal courts in an endless exercise of second-guessing municipal employee-training programs. This is an exercise we believe the federal courts are ill suited to undertake, as well as one that would implicate serious questions of federalism.

*City of Canton, Ohio*, 489 U.S. at 392 (1989).

Based on the foregoing, defendants' motion for summary judgment is GRANTED, and Plaintiff's claims against the District and Sibblies in his individual capacity under § 1983 are dismissed.[15]

**CONCLUSION**

For the foregoing reasons, defendants' motion for summary judgment is GRANTED in its entirety.  The Clerk of Court is respectfully directed to enter judgment for defendants and close the case.

**SO ORDERED.**

Dated: Central Islip, New York
      March 28, 2023

/s/ Gary R. Brown
GARY R. BROWN
United States District Judge

---

[15] To the extent plaintiff is seeking to hold Sibblies liable in his official capacity, such claim merits the same outcome "[b]ecause the real party in interest in an official-capacity suit is the governmental entity and not the named official" and "the entity's policy or custom must have played a part in the violation of federal law."  *Hafer v. Melo*, 502 U.S. 21, 25 (1991).